IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GLEN T. EVANS, SR., | ) | CASE NO. 1:07CV1291 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| STUART HUDSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Glen

T. Evans, Sr. ("Evans") petitions this court for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 on May 2, 2005.  Evans is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State*

*of Ohio v. Evans*, Case No. CR-04-451109-ZA (Cuyahoga County 2004).  For the reasons

given below the magistrate judge recommends that the petition be denied.

I

The January 2004 term of the Cuyahoga County grand jury indicted Evans on one

count of aggravated murder, two counts of kidnaping, and two counts of felonious assault.

The state appellate court reviewing Evans' conviction on direct appeal found the following

facts to be relevant to his case:

> {P 2} On April 13, 2004, police found Douglas Shoup, the victim, dead in a house
> at 6305 Denison Avenue. He had been shot in the head.  The house served as a
> location for individuals to engage in drug activity and prostitution.  Shoup, along with

the other two victims, George "Rocky" Smith and Joseph "Donut" Dixon, lived in the house.  Trial testimony established that numerous other drug users and convicted felons frequented the house, including defendant and a man named Angel Goray.

{P 3} On or around April 12, 2004, Goray beat and robbed an unidentified man in the house.  He allegedly stole a ring, a watch, and some money.  A dispute arose between defendant and Goray over the stolen items.  Goray and defendant allegedly exchanged threats, including that the two may settle the matter with guns.

{P 4} Later that day, defendant loaned his car to Robert Peer.  A group of men, including Peer and defendant, confronted Goray at a Kmart store.  Someone sucker-punched Goray and the men dispersed without resolving the dispute.  All the men abused crack cocaine and testimony indicates they were high most of the time, including April 12, 2004.

{P 5} Back at 6305 Denison, defendant continued his substance abuse and became "disturbed" according to eyewitness accounts.  He accused people of "being against him" and of betraying him.  Dixon suffered a beating and was ordered to stay in a bedroom as "punishment" until defendant allowed him to leave.  At some point, defendant acquired a shotgun, which he pointed in the face of a man called "Smoke."  Smith escorted Smoke out of the house.  Shortly thereafter, defendant turned on Smith, Dixon, and Shoup.

{P 6} Defendant felt someone was hiding in the house and ordered the men, at gunpoint, to search the house.  Defendant told the three that if someone was in the house he would shoot them all.  Defendant further stated that he had previously fantasized about killing them.  Eventually, defendant lined up the men in the hallway and ordered them to put their heads together so he could kill them.  Defendant also told the men that they were going to die that night.  Defendant began talking in rhymes and crying.  A shot was fired and Smith and Dixon ran out of the house.  Smith called 911 and reported shots being fired at 6305 Denison.  Smith and Dixon met each other on the street, where Dixon informed Smith that Shoup was dead.  The two men spent the night hiding in an abandoned house.

{P 7} Phone calls were exchanged among Smith, Dixon, Peer, Goray, and defendant's family members. Peer, still driving defendant's vehicle, picked up Goray and Goray's girlfriend.  Goray, Peer, and Smith each returned to 6305 Denison on April 13, 2004.  Smith stated that he "secured" the house at Goray's instruction to prohibit the discovery of Shoup's body.  Peer returned to pick up his clothes, fearing police would connect him to the murder.  Goray admitted that he took the shotgun from the house. Goray proceeded to defendant's house, where he picked up two more guns and then delivered all of the firearms to Max Robertson. Robertson wiped the shotgun with an oily rag.

{P 8} A vice detective informed police at the scene that they had an encounter with

2

Peer at the residence the night before.  Acting on this lead, police proceeded to
Peer's parents' home.  Peer ultimately agreed to cooperate with police, which
resulted in the apprehension of Smith, Dixon, Goray, and Joy Neville.  Each made
statements to police identifying defendant as the shooter.  Goray assisted police in
recovering the shotgun used to kill Shoup.

{P 9} Smith and Dixon later recanted their statements.  At trial, Dixon claimed he
could not remember anything about that night or the murder or any of his earlier
statements.  Smith, on the other hand, recalled the incident and claimed he recanted
only under duress.

{P 10} Witnesses from the coroner's office testified about the autopsy.  The autopsy
photographs were admitted into evidence without objection.  Shoup sustained a fatal
gunshot wound to his right eye.  It was estimated that the shot was fired from a
distance of one to three feet.

{P 11} The jury found defendant guilty as charged and the court imposed sentence
as follows: 20 years to life for aggravated murder with a consecutive three-year
sentence for the firearm specification; three years for each count of kidnapping to
run concurrent; four years for each count of felonious assault with one to run
concurrent to the other sentences and one to run consecutive to the other counts.
The judge explained her rationale for imposing a consecutive sentence for the
felonious assault on Smith based on the record evidence and Smith's testimony in
particular.

*State v. Evans*, 2005 WL 2100576, at *1-*2 (Ohio App. Sept. 1, 2005)

On November 23, 2004 Evans timely filed in the state appellate court a notice of

appeal.  Evans asserted three assignments of error on appeal:

Assignment of Error No. I

THE VERDICT OF THE JURY FINDING DEFENDANT-APPELLANT GUILTY
OF AGGRAVATED MURDER, KIDNAPPING, AND FELONIOUS ASSAULT
IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Assignment of Error No. II

THE TRIAL COURT ERRED IN ADMITTING THE STATE'S EXHIBITS INTO
EVIDENCE BECAUSE THEY WERE PREJUDICIAL AND CUMULATIVE.

Assignment of Error No. III

THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT

TO CONSECUTIVE TERMS OF IMPRISONMENT WHEN IT DID NOT
FOLLOW THE STATUTORY REQUIREMENTS FOR SUCH A SENTENCE.

On September 12, 2005 the state appellate court affirmed the judgment and sentence of

the trial court.

On October 27, 2005, Evans timely filed a notice of appeal to the Ohio Supreme

Court.  Evans raised two propositions of law in his memorandum in support of jurisdiction:

FIRST PROPOSITION OF LAW

A trial court commits reversible error when it imposes consecutive sentences
on a criminal defendant without making the appropriate findings of
proportionality required by R.C. 2929.14(E)(4).

SECOND PROPOSITION OF LAW

An appellate counsel fails to provide effective assistance of counsel when he
or she fails to raise meritorious assignments of error on appeal.

On February 8, 2006 the Ohio Supreme Court accepted Evans' second proposition of law

for consideration.  Upon consideration, the Ohio Supreme Court on May 3, 2006 dismissed

Evans' cause of action as improvidently accepted.

On May 2, 2007 Evans filed in this court a petition for a federal writ of habeas

corpus.  Evans raises one ground for relief in his petition:

GROUND ONE:  Petitioner was deprived of his right to the effective assistance of
appellate counsel, as guaranteed by the Sixth Amendment to the United States
Constitution, based on appellate counsel's failure to raise a claim that Petitioner's
sentence was imposed in contravention of the Sixth and Fourteenth Amendments
to the United States Constitution.

Respondent filed an Answer/Return of Writ on July 10, 2007 (Docket #6).  Evans filed a

Traverse on August 15, 2007 (Docket #15).  Thus, the petition is ready for decision.

4

II

*A.    Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).  Evans was convicted in the court of common pleas in Cuyahoga County.  This court has jurisdiction over Evans' petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  Evans' claim involves legal issues which can be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

5

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Respondent asserts that Evans has failed to exhaust state remedies for his sole ground for relief.  Respondent also argues that the court should return that claim to the state courts to exhaust state remedies because Evans may still be able to raise his claim pursuant to a delayed application to reopen his appeal pursuant to Ohio R. App. P. 26(B) ("R. 26(B)").  Evans denies that this state remedy is available to him because he is barred from filing a R. 26(B) application by *res judicata*.

Rule 26(B)(1) reads in relevant part:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Respondent contends that although the 90-day period for filing a timely application pursuant to R. 26(B) has expired, Evans should nevertheless try to exhaust state remedies by filing an application to reopen showing good cause for his untimely filing.

Respondent errs.  As Evans notes, the state appellate court to which he would direct

6

his application to reopen, the 8th District Court of Appeals, has long held that applicants who have already taken an appeal to the Ohio Supreme Court are barred by the doctrine of *res judicata* from filing an application to reopen based on a claim of ineffective assistance of appellate counsel.  *See, e.g., State v. Smith*, 2007 WL 1219277 (Ohio App. 8 Dist. April 20, 2007); *State v. Abboud*, 2006 WL 2374413 (Ohio App. 8 Dist. Aug. 11, 2006); *State v. Bryant*, 2006 WL 2298011 (Ohio App. 8 Dist. Aug. 4, 2006); *State v. Crotts*, 2006 WL 563060 (Ohio App. 8 Dist. March 6, 2006); *State v. Hines*, 2005 WL 1484017 (Ohio App. 8 Dist. June 21, 2005); *State v. Ford*, 2005 WL 1118157 (Ohio App. 8 Dist. May 11, 2005).  As Evans has already taken a direct appeal to the Ohio Supreme Court, he is now barred by *res judicata* in Ohio's 8th District Court of Appeals from raising pursuant to R. 26(B) a claim of ineffective assistance of appellate counsel.

Evans has no remedies remaining for his claim.  Thus, Evans' state remedies are exhausted.[1]

---

[1]  Respondent's brief confuses "exhaustion" and "procedural default."  This is not surprising because distinctions between the two have been blurred by courts:

> The problem in interpreting . . . many . . . federal habeas corpus cases is the ambiguous use of the words "exhaustion" and "exhausted."  Courts have attached two meanings to these words in habeas cases.  The generally accepted meaning of "exhaustion" and "exhausted" in habeas cases refers to a petitioner's presentation of federal claims to the state's highest court.  *See, e.g., Rose v. Lundy,* 455 U.S. at 515-16.  However, courts also have used those words to refer to the availability of state remedies when the federal court is considering whether to send a petitioner back to the state courts to present his federal claims.  *See Harris v. Reed,* 489 U.S. 255 (1989) (O'Connor, J., concurring) (sending habeas petitioners back to exhaust state remedies when remedies have expired creates game of "judicial ping pong").  When courts determine state remedies no longer are available, they often state that the petitioner's state remedies have been "exhausted."  *See Matias v. Oshiro,* 683 F.2d 318, 319-20 (9th Cir. 1982).

*Krum v. Thomas*, 774 F. Supp. 563, 565 (D. Az. 1991).  Confusion regarding these

D.     *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his constitutional

claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4;

*Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas

corpus review of "contentions of federal law . . .  not resolved on the merits in the state

_____

concepts was compounded as they evolved in the wake of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The respective consequences for failure to exhaust and procedural default, however, make clear the distinction between the two terms as they are currently used.

The remedy for failure to exhaust is to return the petitioner to the state courts to make use of whatever state remedies remain to adjudicate his claims.  If a petitioner has no remaining remedies because the petitioner cannot comply with the relevant procedural rules or is barred by *res judicata*, it makes no sense to send the petitioner to the state courts in a futile effort to attempt remedies that state law prevents the petitioner from using.  In that case, the petitioner's remedies are exhausted, meaning that no state remedies are available.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Procedural default occurs if the petitioner has failed *properly* to exhaust claims.  If no remedies remain to petitioner and the petitioner has failed properly to raise claims in the highest court in the state, the petitioner has defaulted those claims.  The result, absent a showing of cause and prejudice or a manifest miscarriage of justice, is the dismissal of the claims.  Together, the doctrines of exhaustion and procedural default ensure that most petitioners only raise as federal claims those claims that state courts have had the first opportunity to hear.

Exceptions exist in some cases in which state courts are inconsistent in following their own procedural rules or give courts great discretion to decide which cases to hear.  For example, the Sixth Circuit found in 2006 that the Ohio Supreme Court did not consistently abide by the deadline for raising claims of ineffective assistance of counsel imposed by Ohio App. R. 26(B) ("R. 26(B)").  *See discussion at Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006).  Similarly, the Sixth Circuit has found that R. 5(A) is not an adequate and independent ground upon which Ohio can rely to foreclose habeas review because it grants too much discretion to individual judges to be "firmly established and regularly followed."  *See discussion at Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004).  In cases in which a petitioner raises potentially meritorious claims which might otherwise be barred by the time limit imposed by R. 26(B) or might be raised via R. 5(A), a federal court may send the petitioner to the state courts to exhaust those claims because it cannot be sure that the state courts will reject the petitioner's attempt to use one of those remedies.  *See Rhines v. Weber*, 544 U.S. 269 (2005), for a discussion of when this is appropriate.

proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent alleges that Evans has failed properly to present his claim to the Ohio Supreme Court.  Specifically, respondent alleges a procedural default because Evans raised his claim of ineffective assistance of appellate counsel in the Ohio Supreme Court before raising it in the state appellate court.  Under Ohio law a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  Respondent argues, therefore, that the Ohio Supreme Court rejected Evans' appeal because of this procedural violation.  For this reason respondent concludes that Evans has not fairly presented his claim to the highest court in the state and that this court may not consider the merits of Evans' claim.

Respondent errs.  Since 1992, claims of ineffective assistance of appellate counsel have been an exception to the rule that a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  In *State v. Murnahan*, 63 Ohio St.3d 60, 60, 584 N.E.2d 1204, 1205 (1992) (paragraph two of the syllabus), the Ohio Supreme Court held as follows:  "Claims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of

9

the Ohio Constitution."[2]  The Ohio Supreme Court has repeatedly reaffirmed appellate

courts which have found that appellants default claims of ineffective assistance of appellate

counsel when they fail to raise those claims for the first time in the Ohio Supreme Court if

their appeal to that court occurs before filing an application to reopen pursuant to R. 26(B).

*See, e.g., State v. Hutton*, 100 Ohio St. 3d 176, 181-83, 797 N.E.2d 948, 956-57 (2003);

*State v. Gillard*, 85 Ohio St. 3d 363, 708 N.E.2d 708 (1999); *State v. Colombo*, 73 Ohio St.

3d 306, 652 N.E.2d 987 (1995);  *State v. Terrell*, 72 Ohio St.3d 247, 648 N.E.2d 1353

(1995); and *State v. Dehler*, 73 Ohio St.3d 307, 652 N.E.2d 987 (1995).  Evans did not

violate Ohio's procedural rules, therefore, when he raised his claim of ineffective assistance

of appellate counsel for the first time in the Ohio Supreme Court.  For this reason

respondent's argument that Evans has procedurally defaulted his ground for relief is not

well taken.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court

---

[2] Ohio Constitution, Art. IV, § 2(B)(2)(a)(iii) no longer exists.  Nevertheless, the Ohio Supreme Court has not overruled the holding in the second paragraph of the syllabus of *Murnahan*, and Ohio appellate courts, including courts outside the 8th Appellate District, continue to quote it as good law.  *See, e.g., State v. Dunn*, 2007 WL 2743716 (Ohio App. 2 Dist. Sept. 21, 2007).  Until the Ohio Supreme Court overrules the holding in *Murnahan*, this court must consider the holding in paragraph two of the syllabus to be good law.

of the United States; or resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court
proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only
if the state court's decision is contrary to clearly established federal law or was based on
an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549
U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).
Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the
law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct.,
at 653.

Courts must give independent meaning to the phrases "contrary to" and
"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court.  Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "*involved an unreasonable application of* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is
"contrary to" clearly established federal law if it reaches a conclusion opposite to that
reached by Supreme Court holdings on a question of law or if it faces a set of facts
materially indistinguishable from relevant Supreme Court precedent and still arrives at an
opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our
clearly established precedent if the state court applies a rule that contradicts the governing
law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of
federal law only if the deciding court correctly identifies the legal principle at issue and

11

unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Evans' ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Evans argues that appellate counsel was ineffective for failing to raise a claim that his sentence was imposed contrary to the holding in *Blakely v. Washington*, 542 U.S. 296 (2004).  According to Evans, when the court imposed a sentence for one count of felonious assault to run consecutively to his other sentences, it violated the prohibition in *Blakely* against basing sentences on judicial findings of fact.

The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),  is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure

13

that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.

Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Evans' claim that appellate counsel was ineffective for failing to raise a claim that his sentence was imposed contrary to the holding in *Blakely* is without merit because Evans' sentencing was not contrary to the holding in *Blakely*.  In imposing Evans' sentence and determining that the sentence for one count of felonious assault should be imposed consecutively to his other sentences, the court noted the following:

> The Court is cognizant of the fact that these were multiple sentences that were committed and that there is no single term that would – excuse me, I have to get the words correctly here.  The Court is imposing a consecutive term because it feels that consecutive terms are necessary in order to protect the public and to punish Mr. Evans; that these sentences are not disproportionate to sentences that are normally imposed for an offense like this given the offender's history of criminal convictions.  And Mr. Evans, you do have a history of criminal convictions.  The Court feels that this term is necessary to protect the public and to punish the

14

offender.  Obviously to protect the public from future crimes.

   The Court finds that while there were multiple offenses that were – that took place on this evening, that the felonious assault as to Rocky George Smith must be imposed consecutively given the physical harm that was caused to this particular victim in this matter.  And in order to – basically what that does is not allow you to be eligible for Parole for a period of 27 years.  And I think that term is necessary in order to protect the public and punish you for the crimes that were committed.  I also feel it is necessary because of the offense on this evening, and the fear and the physical harm that was caused to Rocky George Smith ["Smith"] under these circumstances.

Transcript of Proceedings, v. VI (Docket #12), pp. 1165-66.  The court imposed a consecutive sentence for two reasons.  First, consecutive sentences were imposed to protect the public and punish Evans because of Evans' criminal history.  Second, consecutive sentences were imposed because of the harm done to Smith.  These reasons for imposing consecutive sentences were given *in the alternative* ("*that term is necessary* in order to protect the public and punish you for the crimes that were committed.  *I also feel it is necessary* because of the offense on this evening, and the fear and the physical harm that was caused to Rocky George Smith . . . .") (emphasis added).  That is, according to the court, either reason was sufficient for imposing consecutive sentences because either reason made a consecutive sentence necessary.

   The court's first reason for imposing consecutive sentences, to protect the public and punish Evans because of Evans' criminal history, did not violate the holding in *Blakely*.  *Blakely* applied the holding of *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000), to Washington State's sentencing statute.  *Apprendi* held, "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301 (emphasis added).  Thus, the sentencing court's imposing a consecutive

sentence because of Evans' history of convictions did not violate the holding in *Blakely*. As this rationale was sufficient to justify Evans' consecutive sentence, whether the alternative reason for imposing the sentence violated the holding in *Blakely* is beside the point.[3]

The court's imposition of consecutive sentences on Evans did not violate the holding in *Blakely*.  Appellate counsel's representation did not fall below an objective standard of reasonableness, therefore, for failing to argue erroneously that Evans' sentencing violated the holding in *Blakely*.  Because Evans' claim fails the first prong of the *Strickland* test, Evans fails to show that the performance of appellate counsel was constitutionally ineffective.  For this reason the magistrate judge recommends that the court overrule Evans' sole ground for relief.

---

[3]  Respondent continues to argue that Ohio attorneys who failed to challenge sentences imposed in violation of *Blakely* did not provide constitutionally deficient assistance of counsel until the Ohio Supreme Court struck down portions of Ohio's sentencing statute in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006). Respondent makes this argument because appellate courts were divided as to whether *Blakely* invalidated portions of Ohio's sentencing statute.  As this court as pointed out on previous occasions, the United States Supreme Court has recently stated:

> Asking whether a defendant's basic jury-trial right is preserved, though some facts essential to punishment are reserved for determination by the judge, we have said, is the *very* inquiry *Apprendi's* "bright-line rule" was designed to exclude.  See *Blakely,* 542 U.S., at 307-308, 124 S.Ct. 2531.  But see *Black*, 35 Cal.4th, at 1260, 29 Cal. Rptr.3d 740, 113 P.3d, at 547 (stating, remarkably, that "[t]he high court precedents do not draw a bright line").

*Cunningham v. California*, ___ U.S. ___, 127 S. Ct. 856, 166 L. Ed. 2d 856, 2007 WL 135687, at *13 (Jan. 22, 2007) (footnote omitted).  The Supreme Court having found that the holding of *Apprendi* as applied in *Blakely* was a "bright line rule," the state of Ohio will not be heard to claim that the erroneous rulings of state appellate courts are arguable contrary authority.

IV

For the reasons given above the magistrate judge recommends that the court deny

Evans' petition for a writ of habeas corpus.


Date:  September 26, 2007          /s/Patricia A. Hemann
                                   Patricia A. Hemann
                                   United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within ten (10) days of receipt of this notice.  Failure to file objections within the
specified time waives the right to appeal the District Court's order.  See United States v.
Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g
denied, 474 U.S. 1111 (1986)